Statement of the Case.
MONROE, C. J.
The receiver of the insurance company, the name of which appears in the caption, holds $3,000, being the proceeds of a policy of fire insurance issued by said company, which, according to an account filed by the receiver, is to be paid to whomsoever the court may award it; and B. M. McMahan prosecutes this appeal from a judgment awarding it to George and James E. Alexander, upon the basis of the following facts, as disclosed by the record, to wit:
Popper Grocery Company, of Greenville, Tex., obtained a judgment against V. H. Montgomery, merchant of Emory, Tex., and George W. and James E. Alexander, in solido, for an amount which, at the time of the transaction out of which this litigation has arisen, aggregated, with interest, costs, and attorney’s fees, about $1,600, and it recorded an abstract thereof in Raines county, Tex., where it operated as a lien upon 216 acres of land which Montgomery owned in that county, and upon certain lands that were owned by the Alexanders. Thereafter, in November, 1908, Montgomery, to whom the policy above mentioned had been issued, sustained a loss within the terms of the policy, and a few days afterwards assigned his claim against the insurer, with another claim of like character, to Swofford Bros. Dry Goods Company and John P. Hanna, to whom he owed some $8,000. The assignment is written, in the usual form and without qualification, upon the back of the policy, and, we take it, was intended to be given the usual effect. In February, 1910, McMahan, who is a lawyer, and who appears to have been employed in the settlement of Montgomery’s affairs, was- called by him to Emory to meet Hanna with a view to the settlement of the claim of the Swofford -Company and Hanna, by the conveyance to them of land, but it was found that Montgomery did not own enough land for the purpose; one reason, as we understand it, being that the 216 acres, to which we have referred, were incumbered by liens in favor of a bank and of the Moore Grocery *936 Company, which took precedence of that of the Popper Company. The claim of the bank was, however, settled for $500, for which Montgomery gave his notes, indorsed by McMahan (and subsequently paid by him), and the claim of the Moore Company appears also to have been settled, leaving only the lien of the Popper Company against the 216 acres, to which McMahan then added 96 acres of his own, and J. J. Montgomery, brother of. V. H. Montgomery, added 186 acres that belonged to him, and the wliole was conveyed to the Swofford Company and I-Hanna — the 216 acres conveyed by V. H. Montgomery being still incumbered by the lien in favor of the Popper Company. As the consideration for his 96 acres, McMahan took Montgomery’s-note for $960, and Montgomery executed an instrument in writing, which bears date February i, 1910, and contains recitals to the following effect, to wit: That Montgomery had assigned to the Swofford Company and Hanna, to secure his indebtedness to them, the policy of insurance here in question; that McMahan had aided Montgomery in settling his indebtedness to Swofford Company and Hanna by the conveyanee of his 96'acres of land, and by his in-' dorsement for $500, which released Montgomery’s 216 acres and enabled him to convey them; and that (to quote the language):
“Whereas, said policy of insurance is now released from its hypothecation and is now returned to me: Now, I, V. H. Montgomery, for the purpose of securing B. M. McMahan in the payment of my said note for $960 * * * and for the further purpose * * * of securing the said McMahan * * * as my surety * * * for the sum of $500, * * * do hereby transfer and assign to said McMahan said policy of fire insurance, * * * and the said McMahan is * * * empowered to collect said policy * * * and, out of the proceeds, pay the cost of collection and attorney’s fees, and apply the balance, first, to the payment of the $500 for which he has become surety; second, to the payment of the note for $960; and, third, pay what might remain to Montgomery.”
Hanua, no doubt, agreed to a certain extent to the assignment, and in so doing acted for the Swofford Company as well as himself; but in fact the policy was neither released nor returned, as stated, but remained in his possession, and, as we think, was intended so to remain, until the lien of. the Popper Company upon the 216 acres of land was canceled; for the assignment, above quoted, was not indorsed upon it, and upon the day of its date Hanna and McMahan went together to Greenville and had some negotiations with Neyland & Neyland, the attorneys of the Popper Company, the result of which was that the policy was delivered to those attorneys, and they delivered to McMahan and Hanna an authorization from' the Popper Company for the cancellation of that lien. The testimony as to the negotiations is conflicting. McMahan and Hanna say that Neyland (meaning the member of tbe firm who acted as the principal spokesman) was told that the policy belonged to McMahan, and was being turned over to the Popper Company by way of security, in place of the lien which was to' be canceled. The Neylands both testify that nothing was said about McMahan’s interest in the policy, but that the proposition, made by Hanna and as coming from the Swofford -Company and Hanna, assignees of the policy, was that it would he delivered to the Popper Company in consideration of the cancellation, by that company, of its lien. The facts are established, beyond dispute, that the policy was produced, on the occasion in question, by Hanna; that it bore upon its back, as the evidence of title, the assignment from Montgomery to the Swofford Company and Hanna; that Neyland added, in his handwriting, the assignment from the Swofford Company and Hanna; that the policy was then delivered to Neyland, who delivered to McMahan or Hanna a written authorization for the cancellation of the lien. *938 In the meanwhile the Alexanders had an advantageous offer for some of the land owned by them in Raines county, and, finding that it, too, was incumbered by the lien of the Popper Company, G. W. Alexander called (on behalf of both) upon Neyland & Neyland, as the attorneys of the Popper Company, and paid the judgment of that company in full to R. R. Neyland, who thereupon delivered to him the policy of insurance in question, upon the theory that, having paid the judgment, he was entitled to it, there being no suggestion, either from him or Alexander, that the two acts had any other connection with éach other. The Alexanders afterwards placed the policy in the hands of their attorneys for suit; and, the attorneys having brought suit, in the form of an opposition to the receivers’ account, they were met by a similar opposition, filed on behalf of McMahan, with the result that has been stated.
Opinion.
The conclusion that we arrive at, from the facts stated, is that it was the purpose of Montgomery to assign the policy to McMahan, subject to the right of the Swofford Company and Hanna to hold it and use it for the release of the 216 acres of land from the lien of the Popper Company. When, therefore, as the result of the negotiations between Hanna and McMahan, on the one side, and Key laud & Neyland, for the Popper Company, on the other, the policy was delivered to Neyland, and in consideration thereof the lien of the Popper Company was canceled, the Swofford Company and Hanna were devested of all interest in the policy, and the Popper Company acquired the right to hold it, and use it, for the payment of its judgment. When, however, the judgment was .paid by the Alexanders, the Popper Company, in turn, was devested of its interest in the policy, and there remained no incumbrance upon 'the title thereto of McMahan; from which it follows that, as the Popper Company had no interest to convey, the Alexanders acquired none from it, and are not entitled to recover in this suit.
It is therefore ordered that the judgment appealed from be reversed and amended, in so far as it deals with the oppositions of B. M. McMahan and of George W. and James E. Alexander, and as follows, to wit: That the demands of the opponents George W. and James E. Alexander be rejected and their opposition dismissed, and that there now be judgment in favor of the opponent B. M. McMahan, and against the Whitney-Central Trust & Savings Banls, receiver, recognizing said opponent as the owner of the claim under fire policy No. 624,113, issued by the Southern Insurance Company, and entitled to the $3,000 credited to said policy, and to all further dividends that may be so credited. It is further ordered that the costs of these oppositions, in both courts, be paid by said George W. Alexander and James E. Alexander. It is further decreed that, in all other respects, the judgment appealed from be affirmed. <